LEECH TISHMAN FUSCALDO & LAMPL, LLP
Thomas J. Peistrup, CA SBN 213407
    email:  tpeistrup@leechtishman.com
Laura M. Lloyd, CA SBN 242224
    email:  llloyd@leechtishman.com
100 Corson Street
Third Floor
Pasadena, California 91103
Telephone: (626) 796-4000
Facsimile: (626) 795-6321

Attorneys for Plaintiff, ABSORPTION
PHARMACEUTICALS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ABSORPTION PHARMACEUTICALS, LLC, a Delaware limited liability company<br><br>                    Plaintiff,<br><br>          vs.<br><br>LIQUIDTEC, LLC, a California limited liability company, CARSAN YEE, an individual, CHOI LIU, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO.:  8:15-cv-01634<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>   **1. FEDERAL FALSE DESIGNATION OF ORIGIN & UNFAIR COMPETITION [15 U.S.C. §1125(a), LANHAM ACT § 43(a)];**<br><br>   **2. COMMON LAW TRADEMARK INFRINGEMENT;**<br><br>   **3. COMMON LAW FALSE ADVERTISING;**<br><br>   **4. UNJUST ENRICHMENT.**<br><br>**\*\*\*JURY TRIAL DEMANDED\*\*\*** |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Absorption Pharmaceuticals, LLC ("Absorption" and/or "Plaintiff") alleges as follows:

## PARTIES

1. Absorption is a limited liability company organized and existing under the laws of the State of Delaware, and authorized to do business in the State of California. Absorption's principal office is located in Huntington Beach, California.

2. Absorption is informed and believes, and on that basis alleges that Defendant LiquidTec, LLC ("LiquidTec") is a limited liability company organized and existing under the laws of the State of California with an address of 14271 Jeffrey Road, PMB #368, Irvine, California 92620.

3. Absorption is informed and believes, and on that basis alleges that Defendant Carsan Yee ("Yee") is an individual with a place of residence in Irvine, California.

4. Absorption is informed and believes, and on that basis alleges that Defendant Choi Liu ("Liu") is an individual with a place of residence in Irvine, California.

5. Absorption does not know the true names of Defendants Does 1 through 10 or their true capacities, whether as individuals, corporations, partnerships, joint ventures and/or associations of these defendants. When Absorption ascertains the true names and/or capacities of any of these defendants, Absorption will amend its Complaint accordingly. Absorption is informed and believes that, and on that basis alleges that, at all relevant times each of these defendants named in this Complaint as one of Does 1 through 10 was responsible in some manner for the events and happenings alleged in this Complaint.

6. Absorption is informed and believes, and on that basis alleges, that, at all times mentioned in this Complaint, LiquidTec, Yee, Liu, and Does 1-10 (collectively, the "Defendants") were the agents, servants and employees of their Co-Defendants, and in doing the things set forth in this Complaint were acting within the scope of their

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

authority as such agents, servants and employees, and with the permission and consent of their Co-Defendants.  Moreover, Absorption is informed and believes, and on that basis alleges, that each Defendant ratified the acts of his/her/its Co-Defendants, as more particularly alleged in this Complaint.

## JURISDICTION AND VENUE

7.     This Court has original subject matter jurisdiction over the claims that relate to federal trademark infringement and false designation of origin pursuant to 15 U.S.C. §§ 1116(a) and 1121(a), and pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the laws of the United States.  This Court has supplemental jurisdiction over the claims that arise under California common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these are joined with substantial and related claims under trademark laws and because the state law claims are so related to the federal claims in this action that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because each Defendant is a resident of the State of California in which this district is located, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, Defendants are subject to this Court's personal jurisdiction, and Defendants have caused (and continue to cause) damage to Absorption in this district.

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF
### Absorption and its Pharmaceutical Treament Promescent

9.     Absorption was formed in 2008 to manufacture and distribute "Promescent," a revolutionary treatment in the field of male sexual dysfunction. Promescent was developed by Absorption co-founder Dr. Ronald Gilbert, a renowned urological physician with a practice at Hoag Hospital in Newport Beach, California. The company was first formed under the name G&H Brands, LLC, reflecting the initials of its co-founders, before changing its name to Absorption

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Pharmaceuticals, LLC.

10.    In 2010, Absorption's predecessor-in-interest, G&H Brands, LLC, secured federal trademark protection for PROMESCENT under United States Trademark Registration No. 3,793,979.  A true and correct copy of United States Trademark Registration No. 3,793,979 (issued to Absorption's predecessor-in-interest) is attached hereto as Exhibit A; a true and correct copy of the recordation of trademark assignment to Absorption is attached hereto as Exhibit B.

11.    Because of the medical advantages of Promescent, and the significant promotional efforts of Promescent by Absorption, Promescent was enjoyed substantial commercial success and developed significant goodwill.  In fact, more than 1,000 urologists across the United States regularly recommend Promescent to their patients.

12.    Absorption complies with all applicable Food & Drug Administration regulations, specifically including the FDA "monograph" applicable to Promescent, 21 CFR § 348, as well as the general requirements set forth in 21 CFR § 330.1, and the labeling requirements of 21 CFR § 207.20.

**<u>Actions by Defendants</u>**

13.    In October 2013, Defendant Yee contacted Absorption and requested wholesale pricing for Promescent with respect to retail pharmacy storefronts in New York and Hong Kong. Absorption agreed to provide wholesale pricing on the express condition that Yee would not divert the product to other channels or territories.

14.    From October 2013 through August 2014, Defendant Yee placed bulk wholesale orders for Promescent from Absorption, for shipment to Defendant Liu, based entirely upon Yee's repeated representations that such orders were for resale only through retail pharmacy storefronts in New York and Hong Kong.  Absorption's shipments to Yee and Liu were alternatively made to New York and Irvine, California.

15.    Absorption is informed and believes, and on that basis alleges, that Yee's representations to Absorption were false. Yee and Choi were not merely selling from retail pharmacy storefronts in New York and Hong Kong, but, instead, were secretly

building a database of Promescent customers in order to establish an alternative distribution network and unfairly compete with Absorption and its authorized distributors. Accordingly, in or about August 2014, Absorption terminated all bulk and/or wholesale sales to Yee and Choi.

16.     Absorption is informed and believes, and on that basis alleges, that after having used their subterfuge to establish a database of Promescent customers, Yee and Choi schemed with the other Defendants to create a black market "knock off" of Promescent for the sole purpose of deceiving potential and actual Promescent consumers and siphoning legitimate Promescent sales from Absorption.

17.     Absorption is informed and believes, and on that basis alleges, that in or about August 2015 Defendants introduced an illicit "knock off" of Promescent, labelling this product "Permanence."

18.     Absorption is informed and believes, and on that basis alleges, that "Permanence" is manufactured by LiquidTec, and is marketed, and is distributed by the Defendants through various channels, including direct-to-consumer website sales, direct email marketing to Promescent consumers, and through eBay and Amazon storefronts established by Yee for the sale of Promescent.

19.     In their advertising, Defendants claim that "Permanence" functions in a manner identical to Promescent. However, Promescent's efficacy is achieved through its unique and patented eutectic formulation, allowing rapid absorption into the skin and thus optimal effectiveness with minimal side-effects. Promescent is manufactured in a state of the art facility in the United States. Thus, the full functionality of Promescent cannot be replicated either lawfully or cheaply.

20.     The product labeling "Permanence" does not comply with mandatory Food & Drug Administration regulations, including as to its lack of a National Drug Code, a requirement for FDA-approved and compliant drugs. Further, there is no label for "Permanence" on file in any FDA database, and there is thus no way of knowing the product's composition, or where and under what conditions it is manufactured.

Nevertheless, Absorption is informed and believes, and on that basis alleges, that Defendants have not reversed-engineered Promescent (which would necessarily infringe Absorption's patents) and, instead, are simply misrepresenting the attributes of "Permanence."

21.    Defendants' deception extends to the very name of their product, a name which confusingly similar to Absorption's PROMESCENT mark, as illustrated below:




/ / /

/ / /

/ / /

/ / /

/ / /

22.     Defendants have thus adopted a mark (PERMANENCE) that sounds like, looks like, and begins with the same letter as PROMESCENT and that, like PROMESCENT, is three syllables and ten letters in length.  Defendants further elected to style and display that confusingly similar word (PERMANENCE) in all capital letters and in a virtually identical font to PROMESCENT:

**PROMESCENT**®

**PERMANENCE**

23.     The sole purpose of Defendants' activities, as set forth above, is to capitalize on and exploit the goodwill generated by Absorption with respect to Promescent, and to siphon sales to their black market product. To that end, Defendants sell "Permanence" through the same marketing and distribution channels as Promescent, including through the use of customer data harvested from their previous Promescent sales.

24.     Moreover, because Defendants previously made unauthorized sales of Promescent through an Amazon storefront, they have been able to take the exceptionally high feedback attributable to Promescent and mislead consumers with the suggestion that such feedback relates to their "Permanence" product.

25.     Even more brazenly, Defendants have sent "spam" emails to Promescent customers – and even to Absorption personnel – touting the supposed virtues of their "Permanence" product.

26.     Defendants' actions, as set forth above, have caused significant harm to Absorption's reputation with respect to Promescent. In addition, the sale of Defendants' "knock off" product detracts from the sale of genuine Promescent to consumers who are seeking the authentic Promescent.

/ / /

/ / /

# FIRST CAUSE OF ACTION

## (False Designation of Origin & Unfair Competition against All Defendants)

### [15  U.S.C. § 1125(a)]

27.     Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-26.

28.     Defendants have infringed Absorption's PROMESCENT mark, and created a false designation of origin, by using in commerce and without Absorption's permission, a mark that is confusingly similar to Absorption's PROMESCENT mark in connection with the advertisement, offering for sale and/or sale of "Permanence."

29.     By the conduct described above, Defendants have violated the Lanham Act, have unfairly competed with and injured and, unless immediately restrained, will continue to injure Absorption, causing damage to Absorption in an amount to be determined at trial, and will cause irreparable injury to Absorption's goodwill and reputation associated with the value of Absorption's PROMESCENT mark.

30.     Defendants' conduct is likely to cause confusion and mistake, or to deceive as to the affiliation, connection or association of Absorption with Defendants and/or as to the origin, sponsorship or approval of Defendants' goods or commercial activities, in violation of 15 U.S.C. § 1125(a).

31.     Defendants engaged in the conduct alleged above with the intent to trade upon Absorption's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that "Permanence" is associated with, sponsored by, originated from, or is approved by, Absorption, as the manufacturer and distributor of Promescent, when it is not.  Defendants have the legal obligation and responsibility to conduct a search before utilizing a trademark so as not to confuse or deceive consumers as to the origin of its name and mark.

32.     Defendants' continuing and knowing use of Absorption's PROMESCENT mark constitutes willful infringement, false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

## SECOND CAUSE OF ACTION

### (Common Law Trademark Infringement

### against All Defendants)

33.     Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-32.

34.     Absorption has used its PROMESCENT mark since at least 2009, well before any Defendant in this matter began to use the PERMANENCE mark. As such, the consuming public has come to associate the PROMESCENT mark with Absorption's products and Absorption has developed extensive good will in the PROMESCENT mark.

35.     Defendants' use of a mark confusingly similar to Absorption's PROMESCENT mark in order to sell products that neither originated from nor were approved by Absorption has created a likelihood that Defendants' product and mark will confuse the consuming public.

36.     As a result of Defendants' use of a mark confusingly similar to Absorption's PROMESCENT mark, Absorption has suffered financial harm, through the loss of sales, business, reputation and customers, in an amount to be determined at trial, but reasonably believed to be in excess of the jurisdictional minimum of this Court.

37.     Defendants took the aforementioned actions with the deliberate intention to deprive Absorption of its property or legal rights, or otherwise to cause injury; these actions constitute despicable conduct that subjected Absorption to cruel and unjust hardship in conscious disregard for its rights, so as to justify an award of exemplary and punitive damages.

/ / /

/ / /

/ / /

/ / /

## THIRD CAUSE OF ACTION

### (Common Law False Advertising against All Defendants)

38.     Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-37.

39.     As detailed above, Defendants have made statements to consumers in their advertising that "Permanence" contains the same properties as Promescent.

40.     Defendants' statements are false and misleading.

41.     Consumers have been misled by Defendants' statements.

42.     As a result of Defendants' false and/or misleading statements to consumers, Absorption has suffered financial harm, through the loss of sales, business, reputation and customers, in an amount to be determined at trial, but reasonably believed to be in excess of the jurisdictional minimum of this Court.

43.     Defendants took the aforementioned actions with the deliberate intention to deprive Absorption of its property or legal rights, or otherwise to cause injury; these actions constitute despicable conduct that subjected Absorption to cruel and unjust hardship in conscious disregard for its rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment against All Defendants)

44.     Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-43.

45.     Defendants have benefited and/or been enriched by their improper and unlawful conduct toward Absorption as described above, and at Absorption's expense.

46.     The circumstances are such that equity and good conscience dictate that Defendants should compensate Absorption for any revenue attributable to their improper and unlawful conduct described above.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

47.     Accordingly, Absorption is entitled to disgorgement of Defendants' unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Absorption respectfully requests that the Court enter judgment against Defendants as follows:

1.     On its First Cause of Action (Lanham Act), for disgorgement of Defendants' profits under 15 U.S.C. § 1117(a);

2.     On its First Cause of Action (Lanham Act), for damages under 15 U.S.C. § 1117(a) in an amount to be established at trial;

3.     On its First Cause of Action (Lanham Act), for Plaintiff's reasonable attorney fees under 15 U.S.C. § 1117(a);

4.     On its First Cause of Action (Lanham Act), for a preliminary and permanent injunction precluding Defendants and anyone acting in concert with Defendants from importing, selling, offering for sale, or advertising "Permanence" in the United States under 15 U.S.C. § 1116;

5.     On its Second and Third Causes of Action (Common Law Trademark Infringement and False Advertising), for damages in an amount to be established at trial;

6.     On its Second and Third Causes of Action (Common Law Trademark Infringement and False Advertising), for a preliminary and permanent injunction precluding Defendants and anyone acting in concert with Defendants from importing, selling, offering for sale, or advertising "Permanence" in the United States;

7.     On its Second and Third Causes of Action (Common Law Trademark Infringement and False Advertising), for punitive and exemplary damages in an amount appropriate to discourage Defendants and others from engaging in similar conduct;

8.     On its Fourth Cause of Action (Unjust Enrichment), for an order from the

1  Court requiring that Defendants provide complete accountings and for equitable relief,

2  including that Defendants disgorge and return or pay their ill-gotten gains obtained

3  from the illegal transactions entered into and/or pay restitution, including the amount

4  of monies that should have been paid if Defendants had complied with their legal

5  obligations, or as equity allows;

6       9.    On all causes of action, for all costs of suit; and

7      10.    On all causes of action, for such other and further relief as the Court may

8  deem just and equitable.

9

10  DATED:  October 12, 2015    **LEECH TISHMAN FUSCALDO & LAMPL, LLP**

11

12

13                By:  /s/Thomas J. Peistrup

                     Thomas J. Peistrup

14                       Laura M. Lloyd

15                       Attorneys for Plaintiff,

16                       Absorption Pharmaceuticals, LLC

17

18

19

20

21

22

23

24

25

26

27

28

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Absorption demands a jury trial on all issues triable to a jury.


DATED:  October 12, 2015        **LEECH TISHMAN FUSCALDO & LAMPL, LLP**


By:   /s/Thomas J. Peistrup
Thomas J. Peistrup
Laura M. Lloyd

Attorneys for Plaintiff,
Absorption Pharmaceuticals, LLC

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**